24333

In the Matter of J. David HAWKINS, Respondent.

(463 S.E. (2d) 92)

Supreme Court

---

*Attorney General Charles M. Condon* and *Assistant Deputy Attorney General J. Emory Smith, Jr.*, Columbia, *for complainant.*

*A. Camden Lewis* and *Aimee C. Lewis*, both of *Lewis, Babcock & Hawkins,* Columbia, and *David H. Wilkins,* of *Wilkins & Madden,* Greenville, *for respondent.*

Heard Sept. 20, 1995.

Decided Oct. 16, 1995.

*Per Curiam:*

In this attorney grievance matter, the Hearing Panel and Executive Committee agreed that respondent committed misconduct and should be suspended from the practice of law; however, they disagreed on the period of suspension. We find the appropriate sanction is a definite suspension from the practice of law for a period of six months.

The ethical violations committed by respondent arise from his involvement in an illicit sexual relationship with the wife of his employer. Respondent accepted employment offered by William J. Gilliam, owner of Gilliam & Company, as vice president and general counsel while respondent was involved in a clandestine sexual relationship with Mr. Gilliam's wife. Mr. Gilliam relied on respondent for legal advice concerning his business and personal matters. During the course of his employment, Mr. Gilliam discussed with respondent that he was having marital difficulties and requested advice. Respondent advised Mr. Gilliam not to consult with a matrimonial lawyer despite the fact that respondent knew Mrs. Gilliam had retained counsel. When Mr. Gilliam questioned respondent about some personal notes to his wife signed "D," respondent indi-

cated that he did not believe any third parties were involved in a relationship with Mrs. Gilliam and suggested someone else was responsible for the notes. Respondent discouraged Mr. Gilliam from hiring an investigator to determine whether his wife was having an affair. Subsequently, Mr. Gilliam discovered that his wife was having an affair with respondent.

While the affair was ongoing, respondent suggested that the purchase of an $800,000 emerald ring for Mrs. Gilliam might help mend the Gilliam marriage. Respondent advised Mr. Gilliam concerning the purchase of a custom-made boat and the expenditure of substantial sums on personal real property at a time when respondent had reason, if not for the affair, to give different advice. These expenditures had a detrimental effect on Mr. Gilliam's financial interests just prior to going through a divorce. Mr. Gilliam claims that as a result of the affair and the breakup of his marriage caused in part by respondent he was unable to give the necessary attention to his business resulting in prejudice to his business financial interests.

Mr. Gilliam brought a civil action in 1992 against respondent for damages resulting from the affair with Mrs. Gilliam and respondent's employment with Mr. Gilliam. The action resulted in a judgment against respondent for malpractice and breach of fiduciary duty in the amounts of $350,000 actual damages and $7 million punitive damages. The judgments were satisfied by the time of the Panel Hearing. Following revelation of the affair, respondent has sought atonement, participated in extensive counseling, reconciled his marriage, rebuilt his family, been admitted as a partner in a law firm and performed valuable and voluntary community service.

The Panel found there was no evidence of respondent seeking any improper personal gain from his client nor any failure to provide competent legal services to his client, except for damages resulting from the affair. The Panel did not find any evidence that respondent revealed a confidence or secret of Mr. Gilliam or that he used any such confidence or secret to his personal advantage, to the advantage of any third party or to the disadvantage of Mr. Gilliam. The Panel did not find any evidence that respondent failed to seek the lawful objectives of his employer other than his having the affair and failing to disclose the affair.

Nonetheless, we conclude respondent's conduct in this matter constitutes misconduct in violation of former Supreme Court Rule 32, Code of Professional Responsibility.[1] Specifically, respondent has violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, deceit and misrepresentation when he accepted employment with Mr. Gilliam and throughout his employment without disclosing his affair with Mrs. Gilliam. Respondent has violated DR 5-101(A) by accepting employment when his professional judgment on behalf of his client was affected by respondent's personal interest. DR 5-102(B) was violated by respondent accepting and continuing employment when he knew or should have known that he might be called as a significant, and probably adverse, fact witness in a matter between the Gilliams. Canon 9 was violated when respondent failed to avoid the appearance of professional impropriety.

The primary purpose of disbarment or suspension is the removal of an unfit person from the profession for the protection of the courts and the public, not punishment of the offending attorney. *In re Kennedy,* 254 S.C. 463, 176 S.E. (2d) 125 (1970). The authority to discipline attorneys and the manner by which the discipline is given rests entirely with this Court. *In re Padgett,* 290 S.C. 209, 349 S.E. (2d) 338 (1986). It is therefore ordered that respondent shall be suspended from the practice of law in this State for six (6) months. Respondent shall file an affidavit with the Clerk of Court, within fifteen (15) days of the date of this opinion, showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Definite suspension.

---

[1] The conduct at issue occurred prior to the September 1, 1990 effective date of the Rule 407, SCACR, Rules of Professional Conduct.